**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DESIGNWORKS HOMES, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 18-0189-CV-W-SRB |
| | ) | |
| THOMSON SAILORS HOMES, LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court is Defendants' Motion for Summary Judgment. (Doc. #131). For the reasons discussed below, the Motion is GRANTED.

### I.     Legal Standard

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try." *Hughes v. Am. Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)).

## II. Background

Considering the parties' statements of facts and supporting evidence in the light most favorable to Plaintiffs as the non-moving party, the Court finds the relevant facts to be as follows:

Plaintiff Charles Lawrence James is the sole shareholder and home designer for Plaintiff Designworks Homes, Inc., a design-build company. In 1996, Plaintiff James designed and built a home that had a "unique triangular atrium design with stairs as part of the main room" at 4306 Melrose in Columbia, Missouri. (Doc. #51, p. 4). In 1999, Plaintiff James built a second home that incorporated the triangular atrium design at 1713 Kenilworth in Columbia, Missouri. Between 1999 and 2001, Plaintiff James built a third house featuring the triangular atrium design at 4804 Chilton in Columbia, Missouri. On May 10, 2004, Plaintiffs registered the triangular atrium design as a copyrighted architectural work titled "Atrium ranch on walk-out; Angular atrium ranch" with respect to the home constructed at 4804 Chilton Court. (Doc. #51, p. 4). On June 6, 2013, Plaintiffs registered the design as a copyrighted architectural work for a house not yet constructed. On April 22, 2018, Plaintiff James registered the design as a copyrighted technical drawing with respect to the home at 4306 Melrose Drive. Also, on April 22, 2018, Plaintiff James registered the design as a copyrighted technical drawing with respect to the home at 1713 Kenilworth in Columbia, Missouri.

On September 8, 1998, Defendant Elswood Smith Carlson Architects, P.A. created an architectural design that included a triangular atrium feature with stairs adjacent to a living room, known as the Newbury Model. Plaintiffs allege the Newbury Model infringes their copyrights. Plaintiffs allege Defendant Thomson Sailors Homes, LLC ("Thomson Sailors Homes")[1]

---

[1] Defendants Donald Sailors, Bobby F. Sailors, and Edward B. Thomson, III are former members of Thomson Sailors Homes. Defendant Eric Bradley Thomson was a superintendent for Thomson Sailors Homes.

subsequently built thirty-five Newbury Model homes in a development in Kansas City, Missouri, that also infringed on Plaintiffs' copyrights. Plaintiffs allege Thomson Homes, LLC ("Thomson Homes")[2] is the successor-in-interest of Thomson Sailors Homes and thus liable as a successor, and also independently liable for the copying and distribution of a brochure that depicted the allegedly infringing Newbury Model homes. Plaintiffs allege Defendant Team 3 Architects, Inc. ("Team 3 Architects")[3] created and distributed the allegedly infringing Newbury Model house plan to Thomson Sailors Homes and/or Thomson Homes. Plaintiffs allege Thomson Sailors Homes, Team 3 Architects, and Elswood Smith Carlson all put copyright notices on the Newbury Model in violation of U.S. copyright laws.

Plaintiffs' First Amended Complaint sets forth five claims: (1) copyright infringement, Count I; (2) contributory infringement, Count II; (3) vicarious infringement, Count III; (4) accounting against Defendants Thomson Homes and Thomson Sailors Homes only, Count IV; and (5) declaratory and/or injunctive relief, Count V. All claims relate to the copyrighted triangular atrium design with stairs as part of the main room. Defendants move for summary judgment on all counts, arguing: (1) Defendants could not have infringed three of the four copyrighted works asserted by Plaintiffs because such works were created after the Newbury Model was created; (2) Plaintiffs cannot prove copying of the remaining copyrighted work; and (3) Plaintiffs are not entitled to damages.

## III. Discussion

Defendants argue initially they could not have infringed the copyrighted works corresponding with 1713 Kenilworth, 4804 Chilton, or the house not yet constructed, because

---

[2] Defendant Edward B. Thomson, III was the sole member and founder of Thomson Homes. Defendant Eric Bradley Thomson was a superintendent for Thomson Homes.
[3] Defendant Bruce H. Beatty is the sole shareholder of and an architect for Team 3 Architects.

Defendants created the Newbury Model before those works were constructed. Plaintiffs argue that Defendants constructed houses that infringed on Plaintiffs' design after substantial completion of construction of the houses at 1713 Kenilworth and 4804 Chilton, which incorporated the same triangular atrium design and were derivative of the original design as constructed at 4306 Melrose. The Court finds it unnecessary to engage in such analysis because all parties agree that all claims in this case hinge on whether Defendants infringed on Plaintiffs' copyrighted triangular atrium design with stairs as part of the main room. The Court will focus its discussion on whether Plaintiffs can prove Defendants infringed on that design.

To establish their claim of copyright infringement, Plaintiffs are "required to prove ownership of a valid copyright and copying of original elements." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006) (internal citation and quotation marks omitted). "Copying may be established . . . by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." *Id.* (internal citation omitted). "Determination of substantial similarity involves a two-step analysis[.]" *Id.* (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987)). "Similarity of ideas is evaluated extrinsically, focusing on objective similarities in the details of the works." *Id.* "If the ideas are substantially similar, then similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Id.* (internal citation and quotation marks omitted).

The parties do not dispute the validity of Plaintiffs' copyrights. The parties dispute whether Defendants copied Plaintiffs' design.[4]

---

[4] Plaintiffs argue that Defendants' multiple copyright notices on the Newbury Model are unlawful because "[i]t is a legal impossibility that [Thomson Sailors Homes] and [Team 3 Architects] had the legal right to put copyright

4

### A. Access

Access can be established "by showing that the defendants had an opportunity to view or to copy" Plaintiffs' work. *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992) (internal citation and quotation marks omitted). "Establishing a 'bare possibility' of access is not enough; rather, [Plaintiffs] must prove that [Defendants] had a 'reasonable possibility' of viewing [their] work." *Id.* (internal citation omitted). "There must be some evidence from which the jury could determine that [Defendants were] able to view [the copyrighted work]." *Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 8:14-CV-49, 2018 WL 6624217, at *10 (D. Neb. Dec. 18, 2018) (applying *Moore* standard).

Plaintiffs' speculation that Defendants "had possible access to the Plaintiffs' architectural work" simply because the property was "easily accessible from the public-right-away [sic]" and because Plaintiffs advertised the homes during construction amounts to no more than a bare possibility of access, which is not enough. (Doc. #134, pp. 50–51). Plaintiffs offer no evidence that any of the Defendants viewed Plaintiffs' homes. Plaintiffs also assert that their copyrighted design won awards in Columbia, Missouri, but offer no evidence that any of the Defendants knew of the awards or learned of Plaintiffs' design based on the awards. Plaintiffs argue that Defendants could have viewed Plaintiffs' design at an open house, but Plaintiff James admits he does not know whether any of the Defendants attended any open houses, could not recall seeing them there, and did not produce the sign-in sheets he claimed to have kept from the open houses.

The cases in which a plaintiff has demonstrated a defendant had access to copyrighted work involve some circumstantial evidence of a reasonable possibility of viewing the plaintiff's

---

notices on the plans if the copyright was owned by [Elswood Smith Carlson Architects]." (Doc. #134, p. 47) (footnote omitted). This argument has no bearing on whether Defendants infringed on Plaintiffs' copyrighted works.

work. *See, e.g., Kootenia Homes, Inc. v. Reliable Homes, Inc.*, No. CIV. 00-1117ADMAJB, 2002 WL 15594, at *5 (D. Minn. Jan. 3, 2002) (finding reasonable possibility of access where defendant toured plaintiff's home that was subject to copyright); *Moore*, 972 F.2d at 943 (finding reasonable possibility of access where an ongoing relationship between individuals associated with plaintiff and defendant existed); *Sullivan v. Prince*, No. 3:09CV0009 JMM, 2010 WL 330351, at *3 (E.D. Ark. Jan. 20, 2010) (finding reasonable possibility of access where Defendant possessed a "sketch" of copyrighted house plan). Here, Plaintiffs have no circumstantial evidence showing a reasonable possibility that Plaintiffs viewed Defendants' copyrighted work; therefore, Plaintiffs cannot prove Defendants had access to Plaintiffs' triangular atrium design.

### B. Similarity

Plaintiffs argue that even if they cannot prove access, access can be inferred if Plaintiffs can prove the "similarity between the original and the copy is so striking as to preclude any possibility of independent creation." *Moore*, 972 F.2d at 941 n.1. Courts find striking similarity in cases in which two designs are nearly identical. *See, e.g., Thimbleberries, Inc. v. C & F Enters., Inc.*, 142 F. Supp. 2d 1132, 1140 (D. Minn. 2001) (finding striking similarity between wreath-shaped quilt patterns that were "for all practical purposes, identical"); *Midway Mfg. Co. v. Dirkschneider*, 543 F. Supp. 466, 482–83 (D. Neb. 1981) (finding striking similarity between video games that were "virtually identical," "in virtually every detail").

An "architectural work," subject to copyright protection is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. The protected work "includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include

individual standard features." *Id.*; *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

Plaintiffs are unable to prove substantial similarity, let alone striking similarity. There are objective differences in the details of Plaintiffs' and Defendants' works. Plaintiffs describe their copyrighted design as a triangular atrium design with stairs as part of the main room. Plaintiffs' design includes a diamond-shaped great room with a straight staircase to the basement. The great room is positioned at a forty-five-degree angle to the rest of the house. The stairs are integrated as part of the great room, or parallel to the wall in the great room that is opposite the staircase. In contrast, Defendants' design includes an offset triangular atrium that is adjacent to, not part of, a rectangular living room, and an angled staircase to the basement. The staircase forms the triangular shape and protrudes out from the living room. Further, Plaintiffs' diamond-shaped great room is significantly larger than Defendants' triangular atrium design at the end of living room. Accordingly, the arrangement of spaces and elements in the design is not substantially, let alone strikingly, similar. § 101; *see also Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992) ("In architectural plans . . . , modest dissimilarities are more significant than they may be in other types of art works."). Plaintiffs' copyright does not extend to the idea of a triangular-shaped atrium, but to the particular arrangement and composition of the great room and stairwell designed by Plaintiff. § 102(b). Plaintiffs have failed to demonstrate striking similarity between Defendants' and Plaintiffs' works.

## IV. Conclusion

Accordingly, Defendants' Motion for Summary Judgment (Doc. #131) is GRANTED. Because Plaintiffs cannot prove Defendants infringed on their copyrighted design, summary judgment is granted on all claims. Defendants also filed a Joint Motion to Strike Plaintiff's Declaration (Doc. #136). The Court did not reach the damage-related issues contemplated in the Motion to Strike. Accordingly, Defendants' Joint Motion to Strike Plaintiff's Declaration (Doc. #136) is DENIED as moot.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: October 10, 2019